

RECEIVED

JUN 13 2024

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JERAMY LEE BAKER<br>Petitioner,<br><br>Vs.<br><br>STATE OF ALASKA<br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Appellate Case No. A-14477

Federal Case No. 3:24-CV-00120-JMK

Superior Court Case No. 3AN-21-02545 CR

## EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### I. INTRODUCTION

NOW COMES, Petitioner, I, Jeramy Lee Baker, come forward under 28 U.S.C. § 2241 to respectfully submit this Petition for Writ of Habeas Corpus. I assert that my current detention by Alaska Pretrial Services, at the behest of the State of Alaska, infringes upon my Fourth, Fifth, Sixth, and Fourteenth Amendment rights as guaranteed by the United States Constitution. Accordingly, I urgently request that this Honorable Court issue a Writ of Habeas Corpus to compel the Respondent to release me from this wrongful imprisonment.

### II. STANDARD OF REVIEW

"We review de novo a district court's dismissal of a habeas corpus petition," see *Morales v. Calderon.*[1]

### III. JURISDICTION AND VENUE

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." *28 U.S.C. § 2241(c)(3).* Habeas corpus proceedings are available as a forum for statutory and constitutional challenges to the authority of the Attorney General to order detention of a person. See *Zadvydas v. Davis.*[2] As Petitioner challenges his

---

[1] 85 F.3d 1387, 1389 n. 6 (9th Cir.1996)
[2] 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)

Case No. 3AN-21-02545 CR     State v. Baker: Superior Court     Habeas Corpus

continued detention under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, this Court has habeas corpus jurisdiction over the claims related to his detention. Venue is proper in this district under *28 U.S.C. § 1391(b)* because the Respondent resides and the acts leading to the Petitioner's unlawful detention occurred within this district.

## IV. PARTIES

1. Petitioner: I'm currently on house arrest with an ankle monitor in Kenai, Alaska, under the dual supervision of my brother and Alaska Pretrial Services, which serve as an extension of the State of Alaska's custodial authority. I assert that these constraints infringe on my constitutional rights as protected under the United States Constitution.

2. Respondent: The respondent is the State of Alaska, managed by the Alaska Department of Law via the District Attorney's Office and coordinated with Alaska Pretrial Services under the Superior Court's judicial authority.

## V. HABEAS CORPUS AND CONSTITUTIONAL RIGHTS UNDER 28 U.S.C. § 2241

The provision regarding habeas corpus in the United States Constitution is found in Article I, Section 9, Clause 2. It states:

> "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

28 U.S.C. section 2241 grants federal courts the authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to "restraints not shared by the public generally." *Jones v. Cunningham*,[3] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at

---

[3] 371 U.S. 236, 240, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)

Case No. 3AN-21-02545 CR     State v. Baker: Superior Court     Habeas Corpus

the heart of the liberty that Clause protects." *Zadvydas v. Davis*,[4] To determine whether habeas corpus could be used to test legality of given restraint on liberty, Supreme Court has generally looked to common law usages and history of habeas corpus both in England and in the United States. 28 U.S.C.A. § 2241.

In *Peyton v. Rowe*,[5] the United States Supreme Court expanded the scope of habeas corpus relief, allowing prisoners to challenge the legality of their detention even if they were not directly challenging the immediate physical custody. This decision is reflective of the underlying principle of the Habeas Corpus Act of 1842 that safeguarded the right of individuals to contest the lawfulness of their detention. Writ of habeas corpus is procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny. *28 U.S.C.A. § 2241*. ID at N. 2. Writ of habeas corpus is both the symbol and guardian of individual liberty. *28 U.S.C.A. § 2241*. Id at N. 4. Writ of habeas corpus is not static, narrow, formalistic remedy; its scope has grown to achieve the purpose of protecting individuals against the erosion of their right to be free from wrongful restraints upon their liberty. *28 U.S.C.A. § 2241(c)(3)*. Id at N. 7.

## VI. STATEMENT OF FACTS

1. On April 14, 2021, I was arrested in Texas under a warrant from Alaska that was critically flawed due to the absence of an affidavit of probable cause. Such an affidavit is crucial as it establishes reasonable grounds, based on evidence, that I've committed a crime. Without it, my arrest and continued detention violate standard legal procedures, amounting to a clear breach of due process.

2. Substituting an indictment for a probable cause affidavit in my arrest warrant further strays from legal norms, questioning the arrest's legitimacy and suggesting a bypass of required legal protocols.

---

[4] 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)
[5] 391 U.S. 54 (1968)

Case 3:24-cv-00120-SLG   Document 4   Filed 06/14/24   Page 3 of 37

3. The indictment against me not only contains baseless allegations but is marred by claims of police misconduct, including evidence tampering and unauthorized interactions, casting severe doubts on the fairness of the legal process overseeing my extradition and detention.

4. The delay of over 85 days to issue a governor's warrant for my extradition violates my rights under the Interstate Agreement on Detainers and the Sixth Amendment, which ensures a speedy review and trial. This delay infringes on my right to a timely legal process.

5. Even after my extradition to Alaska on July 7, 2021, without resolving the missing probable cause affidavit, all my subsequent detentions—across different facilities and including house arrest—are unlawful, continuing to violate my Fourth Amendment rights against unreasonable searches and seizures by lacking a legal foundation.

6. I filed a motion to dismiss, citing accusations that the government fabricated evidence. In response, the court scheduled and conducted evidentiary hearings on the following dates: January 20, March 10, March 16, May 5, and June 20, 2022.

7. On January 20, Gabriel Brown was called to testify in court. During the direct examination by the prosecution and subsequent cross-examination conducted by myself, his police report - previously submitted to the court and presented to the grand jury - was scrutinized. In the second session of this hearing, I challenged Brown on several discrepancies and inaccuracies I identified in his police report, highlighting omissions and false statements he made.

8. I also challenged him about the audio recording, which contained a distinct, abnormal sound, suggesting that a portion of my conversation with the police officer during the interrogation was edited out. The alteration was glaringly evident from the loud anomaly and the obvious change in background noise, clearly indicating the recording was tampered with, especially at the splice point at the 28-minute mark.

9. Following the hearing, On February 1, 2022, Gabriel Brown submitted an affidavit asserting that he hadn't altered the audio recording. He claimed it corresponded with the AT&T

report obtained through a Glass warrant and confirmed that the duration of the recording—42 minutes and 55 seconds—aligned with the evidence he provided.

10. On March 10, Gabriel Brown was questioned once more. While he reiterated many previous responses, he acknowledged that he did not acquire the alleged victims medical report from the doctor and argued it was unnecessary. In addition, when his audio recording was brought up again, he continued to repudiate any tampering. Detective Czajkowski, Brown's supervisor, revealed he secured a Glass warrant which allowed him to covertly supervise Brown's training, emphasizing the legitimacy of that warrant.

11. On March 16, 2022, Detective Czajkowski made another appearance, clarifying that he possessed a Glass warrant, which he expressly confirmed having. Addressing inquiries regarding potential background noise detected at the 28-minute mark of Brown's audio recording, he admitted uncertainty about the specifics, suggesting that a specialized expert would possess a more definitive understanding. Consequently, the court authorized the petitioner to engage an expert for a thorough examination of the recording, determining whether it had been tampered with. This decision brought the hearing to a close.

12. On May 5, the petitioner called upon Phillips Sprague, an expert witness, who had furnished the court with an audio report alongside his curriculum vitae. The court acknowledged Sprague as an expert in audio wave analysis, qualifying him to provide testimony on his findings from the audio examination. Sprague identified two peculiar anomalies in the recording: one at the one-minute seven-second mark and another at the 28-minute mark. These inconsistencies suggested that a dialogue between the petitioner and the detective might have been deliberately removed from the recording. In an attempt to challenge Sprague's credibility, the prosecution referenced an AT&T report, which they purported to have handed over to the petitioner, a claim contested by the latter. The prosecution argued that the irregularity Sprague noted at the one-minute and seven-second mark was simply the petitioner calling back Gabriel Brown at the commencement of the recorded conversation,

aiming to dismiss Sprague's observations at this specific juncture. The debate intensified over the sound anomaly at the 28-minute mark, with the prosecution suggesting it was merely the sound of a pen clicking. Contrary to this interpretation, Sprague firmly insisted that the noise in question was not a click. However, Sprague's elaboration on this point was cut short, as his testimony ended unexpectedly at that moment.

13. On June 20, 2022, Expert Sprague was called in to testify once more, this time regarding a new analysis he had conducted—specifically, a pen click analysis. This analysis was prompted by the state's assertion that a sound resembling a pen click, detected at the 28-minute mark of the audio recording, could have been incidental. To refute this claim, he presented examples using 10 different pens to demonstrate conclusively that the sound in question was categorically not a pen click, providing a thorough comparison to illustrate the absurdity of the state's suggestion. Despite his compelling evidence, the state maintained its position, asserting that there was no tampering with the audio recording. Additionally, the prosecution alleged that the AT&T report confirmed the length of the audio recording to be 42 minutes and 55 seconds, contradicting the actual duration. They also professed to have furnished the petitioner with this report once again, a claim which proved unsubstantiated in light of the court's evidence and the judicial proceedings. The evidence presented and discussed led to the final conclusions of the court hearings.

14. On August 22, 2022, the court declined the motion, indicating the judge found no grounds for the requested action or relief within the motion's arguments.

15. On August 24, 2022, during a discovery hearing, the petitioner inquired whether the court had reviewed the AT&T report, to which the court responded affirmatively. However, a discrepancy emerged as it was revealed that the court had actually not received the AT&T report since it was never formally entered into the case evidence. Addressing this oversight, the court clarified its position: should it obtain the report, a thorough review would be undertaken, followed by a judicial decision. In order to resolve this issue, the court advised

Case No. 3AN-21-02545 CR          State v. Baker: Superior Court          Habeas Corpus

the petitioner to submit a motion for reconsideration, specifically instructing that the AT&T report be attached to this motion. This action would enable the court to reassess the matter and issue a subsequent ruling based on the newly provided evidence.

16. During the discovery hearing on September 21, 2021, a crucial revelation came to light: the state's failure to submit the AT&T report, contrary to its previous assertions made during several hearings, was acknowledged. This oversight was taken under advisement by the court. The implications of this lapse are significant, as the AT&T report could contain pivotal information that influences the court's understanding and decisions relating to the case at hand.

17. On October 31, 2022, the court decided to deny the motion for reconsideration that had been submitted. This means the court chose not to revise its previous decision or ruling in light of the request made to reconsider certain aspects of the case. Essentially, the court concluded that there wasn't sufficient justification or new information presented that warranted changing its original stance or re-evaluating the matter at hand.

18. After learning about the alleged training on October 29, 2020, I requested the relevant glass warrant from the prosecution, which Detective Czajkowski had referenced. However, the state failed to produce such a warrant, asserting instead that none had ever been issued for this case.

19. Consequently, during an evidence hearing on September 21, 2023, Detective Czajkowski conceded that his previous claim of having a glass warrant was a misstatement. While the state contended a glass warrant wasn't necessary, they acknowledged its absence in this matter.

20. I obtained an AT&T report from the state and engaged Sprague, an expert, to examine it. Along with the AT&T report, I provided Sprague with metadata from the DIM server. It's important to note that this metadata was from a server, not the original recording device,

which I had been authorized by the state to access. Additionally, I handed over a transcript in which Gabriel Brown had given testimony on January 20, 2022.

21. Upon analysis, Sprague discovered evidence of tampering in the AT&T report. Specifically, he noted a splice at the one minute and seven-second mark, indicating that two separate phone calls, occurring six minutes apart, had been merged. He also observed that the metadata was in WMA file format—this is uncommon for recording devices, suggesting a deviation from standard practice.

22. Further reviewing the evidence, he found that both audio recordings provided by the state were in WMA format when they were uploaded to the DIM server. This was particularly notable because Gabriel Brown had testified that after uploading the recordings to the DIM server, he deleted the originals from the media card and also wiped the metadata from that card—this deletion rendered it impossible to verify the authenticity of the original recordings, as any potential proof of alteration was destroyed.

23. I officially submitted Sprague's new analytical report on February 5, 2020. Despite waiting nearly 90 days, the state failed to address the findings within this report. The state's position was that the court already determined the recordings were unaltered, and therefore, they felt no obligation to consider Sprague's analysis.

24. As a consequent action, the court refused to dismiss the case in light of the new evidence. The court also declined to review the audio alterations documented in the report. Finally, the court intimated that if I was dissatisfied with their decision, my recourse would be to file an appeal.

25. On February 15, 2024, under case 3AN-24-00986CR, my cell phone and laptop, crucial for my defense, were seized. Despite the charges being dropped on May 1, 2024, the state unlawfully retains my property amidst a baffling vendetta against me by the prosecution. As a pro se litigant, I'm forced to reconstruct my defense, an egregious rights violation demanding immediate judicial action for the return of my belongings and defense materials.

26. Now, having been detained since April 14, 2021, for over three years, my case highlights substantial and continual violations of my civil liberties and the constitutional guarantee of due process.

## VIII. LEGAL GROUNDS FOR RELIEF

Currently under house arrest in Alaska, I face severe travel restrictions and must seek approval to visit places like Anchorage from Alaska Pre-Trial Services. As an Alaskan, I expect protection against unreasonable arrest as the 4th, 5th, and 6th Amendments stipulate. Law enforcement must provide a warrant based on probable cause for legal interceptions, a protocol breached when Alaska authorities misrepresented facts to allege probable cause, infringing on my privacy rights and due process. A glaring example of this violation occurred on October 29, 2020, central to my upcoming trial on July 1, 2024. Faced with inadequate evidence disclosure and limited preparation time, my defense is specifically challenged by an officer's misconduct. This officer altered an audio recording to falsely imply probable cause, severely breaching evidence integrity and undermining judiciary credibility, thereby endangering my right to due process.

This evidence tampering incident highlights the absence of genuine probable cause at my arrest. Far from a simple mistake, it indicates a deliberate disregard for legal arrest standards. Such manipulation of evidence violates ethical standards, eroding the factual basis for my detention and challenging the rule of law, which demands substantial facts for custody.

Additionally, fabricating evidence skews the original scarcity of incriminating evidence against me, negating my arrest's legality. The 14th Amendment guarantees due process and equal protection, principles trampled by introducing false evidence. This erodes the justice system's foundation built on fairness and truth, damaging public trust and blatantly disregarding constitutionally guaranteed liberties. The Supreme Court has unequivocally held that convictions based upon fabricated or tampered evidence directly violate the principles of due

process, as firmly established in landmark cases such as *Napue v. Illinois*,[6] and *Pyle v. Kansas*.[7] The United States Supreme Court has made it clear: using false evidence is a grave breach of constitutional rights. Introducing such evidence undermines the presumption of innocence, which is crucial to the integrity of the American justice system. This conduct violates the 14th Amendment, which guarantees due process and equal protection, and tarnishes the judiciary's reputation for impartiality and fairness. These violations are not just indefensible—they represent a deep injustice. It's imperative that the legal system upholds the Constitution and maintains its legitimacy. In short, employing fabricated evidence and initiating groundless prosecutions strike at the heart of justice. These actions infringe on constitutional rights and erode trust in the legal system. We must insist on strict constitutional adherence to preserve the integrity of the judiciary and ensure fair justice for all.

### 1. GROUND ONE: THE USE OF FABRICATED EVIDENCE

The use of fabricated evidence critically undermines the integrity of the legal process and directly violates my constitutional right to a fair trial. Here are several specific allegations:

1. Submission of Fabricated Evidence: On April 9, 2021, without informing me of the charges, the prosecutor called Gabriel Brown to testify before the grand jury. As I was in Texas at that time, I was completely unaware of the session. During the proceeding, the prosecutor introduced an indictment and audio recordings against me that were, in fact, fabricated. This act severely undermined the integrity of the judicial process, as it compromised the necessary factual basis for impartial justice.

2. Manipulation of Material Evidence: In a glaring act of misconduct, someone intentionally modified or tampered with physical evidence crucial to my case. By deliberately altering it to fit the prosecution's narrative, they not only undermined the objectivity and

---

[6] 360 U.S. 264 (1959)
[7] 317 U.S. 213 (1942)

integrity essential for fair judgment but also misled the grand jury, affecting their ability to make an impartial decision.

3. Subornation of Perjury: Upon reviewing the evidence I received, it became clear that critical witness testimony was compromised due to coercion or undue influence. This underhanded interference resulted in testimonies that were either deceptive or completely fabricated, tainting the evidentiary record with falsehoods.

4. Intentional Falsification of Evidence: In a calculated effort to subvert justice, I found that crucial facts relevant to the case were deliberately misstated. This strategic distortion of the truth aimed not only to undermine my defense but also to dupe the defense team, the grand jury, and the judiciary, thereby compromising the integrity of the legal proceedings.

5. Fabrication of Evidence: Upon reviewing the evidence I received, it is clear that the evidence was fabricated, severely undermining the integrity of the legal process. This discovery is alarming and calls for immediate attention to preserve the fairness and justice of the proceedings.

My account of the wrongdoings in this case highlights a grave miscarriage of justice from the start of the proceedings against me, especially during the indictment process. This array of judicial misconduct, which includes falsifying documents, tampering with evidence, committing perjury, and intentionally skewing key facts, does more than violate my rights—it shakes the very foundation of trust that the justice system is built on. These calculated actions, taken to twist the outcome of my indictment, show a blatant attempt to block justice. The evidence clearly shows a systematic and willful effort to elicit false testimonies and create fake evidence, making the indictment fundamentally defective and lacking any legitimate grounds.

Upon examining the evidence, it's evident that there has been substantial manipulation in the process of securing my indictment, directly undermining its integrity. As such, the judicial system must act decisively to dismiss this tainted indictment with prejudice and initiate an

Case 3:24-cv-00120-SLG   Document 4   Filed 06/14/24   Page 11 of 37

unbiased reevaluation of the case. My aim goes beyond personal vindication; it is about upholding the legal safeguards promised by our justice system. Dismissing the indictment with prejudice is essential not only to rectify the injustices I've faced but also to reinforce the judiciary's dedication to fairness, transparency, and adherence to the rule of law. Such firm actions are necessary to rebuild public confidence, ensuring processes remain untainted, impartial, and free from manipulative practices.

## A. LEGAL ARGUMENT:

The Fourth Amendment of the U.S. Constitution explicitly states:

> "People have the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. Warrants cannot be issued without probable cause, confirmed by oath or affirmation, and must specifically describe the place to be searched, and the persons or things to be seized."

The Fourth Amendment to the U.S. Constitution, a critical element of the Bill of Rights, enforces the principle that citizens are protected against unreasonable searches and seizures. This constitutional provision is derived from jurisprudential responses to the writs of assistance —broad and general search warrants that were a major grievance leading to the American Revolution. The amendment mandates that search and arrest warrants be issued by a judicial authority, supported by probable cause, and narrowly tailored based on specific information detailed in an affidavit submitted by a sworn complainant, typically a law enforcement officer. This ensures that the issuing authority holds the affiant accountable for the accuracy and truthfulness of the information provided.

1. Federal Rule of Criminal Procedure 3 mandates that a complaint shall be a sworn written declaration outlining the essential facts constituting the alleged offense, presented before a magistrate judge or, in their absence, a state or local judicial official.

2. Federal Rule of Criminal Procedure 4(a) states that a judge must issue an arrest warrant if a complaint, supported by one or more affidavits, shows probable cause that the

defendant committed an offense. Alternatively, upon a government attorney's request, a judge may issue a summons instead of a warrant. If the defendant fails to respond to the summons, the judge must issue an arrest warrant at the request of the government attorney.

3. Rule 4(b)(1) states that a warrant must contain the defendant's name (or an adequate description in lieu of a name), the alleged crime, an order for the defendant's apprehension and appearance before the court, and the signature of the issuing judge.

4. Under Federal Rule of Criminal Procedure 5(b), if an individual is apprehended without a warrant, a complaint establishing probable cause must be expeditiously filed in the appropriate jurisdiction.

5. Lastly, Rule 6(f) requires a grand jury indictment only if at least 12 jurors agree, evidenced by a concurrence form.

## B. APPLICATION OF FACTS TO LAW

The Fourth Amendment clearly demands that warrants are to be issued solely on the grounds of probable cause, supported by oath or affirmation.

1. Under Federal Rule of Criminal Procedure 3, there's a requirement for the filing of a complaint that details the essential facts and is sworn under oath. Yet, such a complaint is notably missing in my case.

2. Furthermore, Federal Rule of Criminal Procedure 4(a) declares that a complaint must have the backing of a probable cause affidavit, or in its absence, be accompanied by one or more affidavits to substantiate probable cause. Again, my case lacks this crucial affidavit.

3. According to Federal Rule of Criminal Procedure 4(b)(1), a warrant must list the defendant's name, detail the alleged offense, order an arrest, and bear a judge's signature.

4. Federal Rule of Criminal Procedure 5(b) states that if someone is arrested without a warrant, a complaint demonstrating probable cause must be swiftly filed in court.

5. Additionally, Federal Rule of Criminal Procedure 6(f) stipulates that an indictment requires the agreement of at least 12 jurors, typically confirmed through a Grand Jury Concurrence form.

However, despite an indictment being issued against me on April 9, 2021, the government has failed to file a complaint, a probable cause affidavit, or any oath or affirmation as required. This omission not only violates the Fourth Amendment but also Federal Rules of Criminal Procedure 3, 4, 5, and 6, along with the Due Process Clause of the Fifth Amendment.

### C. Legal Analysis of Due Process and Its Effect on Jurisdiction

The doctrine of due process, as enshrined in the Fifth and Fourteenth Amendments, is a cornerstone of the American judicial system, ensuring that no person is deprived of *"life, liberty or property without due process of law."* The Supreme Court of the United States has addressed this principle through numerous landmark cases, each contributing to the fabric of constitutional law and clarifying the circumstances under which due process may affect jurisdiction.

1. In *Gideon v. Wainwright*,[8] the Court held that the Sixth Amendment's guarantee of counsel is a fundamental right essential to a fair trial and is, therefore, applicable to the states through the Due Process Clause of the Fourteenth Amendment. The decision underscored the importance of counsel as an integral component of the adversarial system of justice and set a precedent that the absence of such representation could impede lawful jurisdiction.

2. In *Mapp v. Ohio*,[9] the exclusionary rule was incorporated into the Due Process Clause, barring illegally obtained evidence from use in court. This ruling inextricably linked due

---

[8] 372 U.S. 335 (1963)
[9] 367 U.S. 643 (1961)

process with the Fourth Amendment, indicating that jurisdiction could be compromised when evidence is admitted in violation of these constitutional protections.

3. The Court further expanded the scope of due process in *Miranda v. Arizona*,[10] by declaring that suspects must be informed of their rights to avoid self-incrimination and to legal counsel. With this pronouncement, due process became not only a protective shield for defendants but also a potential jurisdictional pitfall for prosecutions that fail to comply.

4. In *Barker v. Wingo*,[11] due process was articulated through the lens of a speedy trial. The Court held a delay can be a violation of due process, ultimately affecting the justice system's authority to prosecute an offense if the right is infringed.

5. By introducing a balancing test in *Matthews v. Eldridge*,[12] the Court set parameters for evaluating what ancillary procedural safeguards might be constitutionally required, recognizing that due process is not a static concept but one responsive to the particular circumstances of a case.

6. Further, in *Strickland v. Washington*,[13] effective assistance by counsel was defined as a determinant of a fair trial. The ruling suggests that a conviction can be overturned — implicating jurisdiction — if representation did not meet an "objective standard of reasonableness."

7. The intersection of due process and jurisdiction was made manifest in *Hamdi v. Rumsfeld*,[14] where it was determined that a citizen-detainee seeking to challenge his enemy-combatant status has the right to a meaningful opportunity to do so before a neutral decision maker.

---

[10] 384 U.S. 436 (1966)
[11] 407 U.S. 514 (1972)
[12] 424 U.S. 319 (1976)
[13] 466 U.S. 668 (1984)
[14] 542 U.S. 507 (2004)

Case No. 3AN-21-02545 CR         State v. Baker: Superior Court         Habeas Corpus

Case 3:24-cv-00120-SLG   Document 4   Filed 06/14/24   Page 15 of 37

8. *Boumediene v. Bush*,[15] pushed the due process boundaries further, considering the rights of non-citizens in holding that Guantanamo Bay detainees have the constitutional privilege to habeas corpus, reaffirming the principle that laws and statutes must not operate outside the bounds of due process.

9. The necessity of a jury trial as a due process right was cemented in *Duncan v. Louisiana*,[16] with the Court determining that the Sixth Amendment right to a jury trial in criminal cases is fundamental to the American scheme of justice.

10. Lastly, *Rochin v. California*,[17] approached due process as a protector of fundamental fairness, with the Court deeming certain police methods as conduct that "shocks the conscience" and violates the due process clause.

These cases collectively demonstrate that due process is not merely a procedural formality but a substantive value that may directly affect a court's jurisdiction. Adherence to due process safeguards lends legitimacy to the judicial process, while violations can trigger the withdrawal of judicial authority, exemplifying the broader principle that the rule of law must always prevail.

    As a result of the defective issuance of the indictment, alongside the absence of a complaint, summons, probable cause affidavit, and multiple violations of constitutional and procedural mandates, the jurisdiction in my case has been undermined. Therefore, I move for the dismissal of the indictment with prejudice and urgently request an immediate release from this unlawful detention. I seek these remedies under the supervisory powers of the district court.

2. Ground Two: Substantial Due Process Lapses

This case embodies significant due process lapses, directly infringing upon the constitutional protections that should be indefeasible. Paramount issues requiring urgent address include:

---

[15] 553 U.S. 723 (2008)
[16] 391 U.S. 145 (1968)
[17] 342 U.S. 165 (1952)

Page 16 of 37
Case No. 3AN-21-02545 CR    State v. Baker: Superior Court    Habeas Corpus

Case 3:24-cv-00120-SLG   Document 4   Filed 06/14/24   Page 16 of 37

1.  Withheld Exculpatory Evidence: The prosecution's failure to disclose exculpatory evidence, such as the police officer altering his audio recording to falsely suggest my confession to the charges, constitutes a critical violation of my rights. This act of withholding evidence compromises the integrity of a fair trial by concealing the truth.

2.  Denied Hearing: The court's refusal to review clear evidence of police officers altering audio recordings to justify my arrest directly infringed upon my constitutional right to challenge the evidence against me. A fair hearing, crucial for the judicial system's integrity, mandates that both parties have the opportunity to present their cases.

3.  Judicial Bias: The necessity for impartial judgment is unquestionable, yet my concerns about judicial bias were dismissed. I sought to disqualify the judge, but he concealed my motion, preventing a review by other judges, and continued to preside over the case. This oversight undermines the core of justice and casts doubt on the trial's fairness.

4.  Restricted Evidence Access: Denying the Petitioner access to crucial evidence like the AT&T report and the recording device's metadata impeded the ability to craft a full defense at the 2022 evidentiary hearings, violating the legal process's foundational principles of equality and fairness.

5.  Rushed Process: By rushing the legal procedures and failing to provide the evidence the petitioner is entitled to, the state hampered the petitioner's readiness for defense. This unfair advantage undermined the petitioner's case and called into question the fairness of the court's due process.

Taken collectively, these issues not only demonstrate a disregard for procedural justice but also suggest a deliberate attempt to disenfranchise Petitioner from the due procedural protections afforded by the Constitution. The cumulative effect of withheld exculpatory evidence, denial of a fair hearing, judicial bias, restricted access to evidence, and a rushed process unequivocally violates the due process clause, leading to a fundamentally unfair trial.

## A. LEGAL ARGUMENT

# I. INTRODUCTION

This legal argument addresses the legal standards governing the dismissal of indictments with prejudice, particularly in the context of Brady violations and prosecutorial misconduct. Through an examination of case law, including *United States v. Kearns*, *Devereaux v. Abbey*, and *United States v. Bundy*, the district court considers when dismissal with prejudice is an appropriate sanction.

# II. STATEMENT OF FACTS:

The overt omission of critical exculpatory evidence indicates not only a procedural deficiency but suggests the presence of an ulterior motive and bias against the petitioner. The pertinent evidence not provided includes:

1.  Metadata from the Recording Device: The prosecution did not disclose metadata from the recording device, which could reveal whether the recording's integrity had been compromised or if there were any anomalies indicating tampering.

2.  AT&T Report: An AT&T report obtained by the prosecution during the evidentiary hearings indicated that two phone calls, which took place six minutes apart, were improperly spliced together to appear as one continuous conversation. This manipulation could falsely portray the exchange between the parties, potentially altering the context and perceived intent of the conversation.

3.  Criminal Records of the Alleged Victim: Furthermore, the prosecution withheld the criminal history of the alleged victim. Such information is crucial as it may influence the reliability and motivation of the alleged victim's account, as well as reveal any potential biases or motives for accusing the petitioner.

In addition to these evidentiary concerns, there are serious allegations that an individual within the police department instructed the officer to fabricate the evidence. If such a directive occurred, it would point to a premeditated strategy to wrongfully target the petitioner, further

compounding the violations of due process and challenging the integrity of the law enforcement and legal system involved in this case.

The combination of suppressed exculpatory evidence, the manipulated presentation of communications, and the alleged orchestration behind the evidence fabrication strongly suggests a deliberate attempt to secure the petitioner's indictment irrespective of actual guilt. Such conduct not only violates the petitioner's constitutional rights but may also constitute grounds for legal actions against those responsible for the misconduct. The gravity of these issues necessitates stringent judicial scrutiny, potential sanctions for the prosecutorial team and law enforcement officers involved, and the review of the indictment's validity given such transgressions against the foundations of a just trial process.

### III. LEGAL STANDARDS

To merit the dismissal of an indictment with prejudice due to Brady violations, courts require more than the substantial prejudice to the defendant's case or multiple Brady violations by the government. The Ninth Circuit in United States v. Kearns,[18] necessitates that the government must have engaged in flagrant misconduct in withholding evidence.

### IV. FLAGRANT MISCONDUCT DEFINITION

Flagrant misconduct is defined as "conduct...so grossly shocking and outrageous as to violate the universal sense of justice." As established in Kearns, it involves more than accidental or negligent failure to disclose. It encompasses actions that display a reckless disregard for prosecutorial obligations regarding the disclosure of evidence.

### V. CONSTITUTIONAL IMPLICATIONS OF PROSECUTORIAL MISCONDUCT

Dismissal is a warranted sanction for government misconduct that significantly prejudices a defendant's constitutional rights, as established in *United States v. Morrison*.[19] Charging or convicting an individual based on perjured testimony or deliberately fabricated evidence is

---

[18] 5 F.3d 1251, 1253 (9th Cir. 1993)
[19] (449 U.S. 365, 101 S.Ct. 665)

constitutionally impermissible. Under *Pyle v. Kansas*[20] and subsequent rulings like *Devereaux v. Abbey*,[21] using false evidence to fabricate charges or secure convictions constitutes a constitutional violation, justifying dismissal if such actions occur.

## VI. SUPREME COURT PRECEDENTS JUSTIFYING DISMISSAL

1. *Brady v. Maryland*,[22] - Obligates the prosecution to disclose evidence favorable to the accused, material to guilt or punishment.

2. *Giglio v. United States*,[23] - Extends Brady to require disclosure of information affecting the credibility of government witnesses.

3. *Napue v. Illinois*,[24] - Holds that a conviction obtained through the use of known false testimony violates due process.

4. *Berger v. United States*,[25] - Articulates the prosecutorial obligation to ensure justice, not merely to seek convictions.

5. *Kyles v. Whitley*,[26] - Clarifies that the suppression of any favorable evidence by the prosecutor violates due process, judged collectively.

6. *United States v. Bagley*,[27] - Materiality is key in Brady violations, with suppressed evidence capable of altering the outcome constituting a violation.

---

[20] (317 U.S. 213, 1942)

[21] 263 F.3d 1070, 1075 (9th Cir. 2001)

[22] 373 U.S. 83 (1963)

[23] 405 U.S. 150 (1972)

[24] 360 U.S. 264 (1959)

[25] 295 U.S. 78 (1935)

[26] 514 U.S. 419 (1995)

[27] 473 U.S. 667 (1985)

7. *Banks v. Dretke*,[28] - Mandates the disclosure of favorable evidence by the prosecution, regardless of defense requests.

8. *Smith v. Cain*,[29] - Confirms that nondisclosure of material evidence favorable to the defense violates due process.

9. *Cone v. Bell*,[30] - Expands Brady to include evidence useful for impeaching the credibility of witnesses.

## VII. DISMISSAL AS AN APPROPRIATE SANCTION

Dismissal of an indictment is considered an appropriate sanction for misconduct egregious enough to prejudice a defendant's constitutional rights. This principle is supported by case law that emphasizes the role of the criminal justice system in upholding due process and punishing state representatives' knowledge of false evidence, as seen in *Mooney v. Holohan*,[31] and related cases.

## VIII. THE STANDARD OF RECKLESSNESS IN BRADY VIOLATIONS

In *United States v. Bundy*,[32] the court clarified that flagrant misconduct under district courts' supervisory powers does not require intentional violation of disclosure obligations. Reckless disregard for the obligation to disclose Brady materials suffices to constitute flagrant misconduct and thus could justify dismissal with prejudice.

## IX. CONCLUSION

Prosecutorial misconduct in the form of Brady violations can lead to the dismissal of an indictment with prejudice, especially when the conduct in question violates fundamental fairness and due process. However, such a sanction is warranted only when the government's misconduct is flagrant, going beyond mere negligence and approaching or reaching the level of

---

[28] 540 U.S. 668 (2004)
[29] 565 U.S. 73 (2012)
[30] 556 U.S. 449 (2009)
[31] 294 U.S. 103 (1935)
[32] 968 F.3d 1019 (9th Cir. 2020)

Case No. 3AN-21-02545 CR    State v. Baker: Superior Court    Habeas Corpus

reckless disregard for constitutional obligations. The case law establishes that prosecutorial misconduct requires an active and egregious undermining of a fair trial, potentially through the presentation of false evidence or the willful withholding of exculpatory information. It is critical for prosecutors to maintain a rigorous commitment to ethical conduct and the constitutional rights of the accused to prevent undermining the integrity of the judicial process.

The conclusion is unmistakable and requires judicial acknowledgment: The violations of due process in this case extend beyond mere procedural oversights and amount to a gross miscarriage of justice. Therefore, redress through appropriate legal channels is essential. To maintain constitutional adherence and judicial integrity, Petitioner's indictment and pre-trial incarceration demand exhaustive judicial review. Petitioner assert his right to a trial that strictly complies with due process standards, free from the severe procedural defects that have tainted the proceedings against him. Consequently, Petitioner moves to dismiss the indictment with prejudice and seek Petitioner's immediate release from unlawful custody pursuant to the supervisory authority of the district court.

### 3. GROUND THREE: UNLAWFUL SEARCH AND SEIZURE VIOLATIONS

To conduct a legal interception of a telephone conversation involving a suspect, law enforcement officials are mandated to obtain what's referred to as a "glass warrant." This prerequisite underscores the necessity of securing judicial authority prior to the interception, ensuring adherence to legal protocols. The essence of this requirement stems from the broader legal framework that safeguards the privacy and consent of individuals in their private conversations. Specifically, in a scenario where the government, through its agents, aims to capture statements that could potentially be self-incriminating, a robust legal mechanism kicks in. This mechanism compels law enforcement to seek and obtain explicit authorization from a judicial officer, thereby providing a controlled method to navigates around the protections enshrined in the 4th (unreasonable searches and seizures), 5th (self-incrimination), and 6th (right to counsel) Amendments.

To secure such a warrant, it is incumbent upon the police to convincingly demonstrate, before a judge or magistrate, the existence of reasonable suspicion. This suspicion must be substantiated by probable cause that justifies the need for warrant issuance. This judicial oversight ensures that the fundamental rights underpinning an individual's privacy and liberty are not arbitrarily violated, thereby reinforcing the lawful balance between enforcing the law and protecting constitutional rights. The conduct detailed within the allegations represents a glaring breach of my Fourth Amendment rights, which protect against unreasonable searches and seizures. The actions taken have clear implications, as outlined:

I. STATEMENT OF FACTS:

On October 29, 2020, the petitioner was subjected to a series of serious constitutional violations during an non custodial interrogation by law enforcement officers. The use of direct telephone communication for the interrogation, without any prior notice or the chance for the petitioner to obtain legal counsel, was a direct violation of the Fourth Amendment's protection against unreasonable searches and seizures, and the Sixth Amendment's guarantee of the right to legal counsel. Further exacerbating the violation of the petitioner's rights, this unauthorized and covert operation lacked judicial oversight, infringing on the petitioner's expectation of privacy and fundamental legally-enshrined safeguards.

This incident was compounded by an aggressive and coercive approach to questioning by officials over the phone, which transpired without the presence of the petitioner's attorney, leading to heightened vulnerability to intimidation or undue pressure. Additionally, the officers recorded these interactions without the consent of the petitioner or a lawful warrant, a clear breach of the petitioner's reasonable expectation of privacy and a violation of due process.

Alarmingly, throughout this interaction, law enforcement officials failed to deliver the Miranda warnings to the petitioner, hereby neglecting to inform the individual of their rights to silence and to an attorney. The omission of Miranda warnings represents not only a grave procedural error but also constitutes a substantive violation of the petitioner's rights under the

Fifth Amendment, which protects against self-incrimination, and under the Sixth Amendment, which assures the right to counsel. This failure critically impaired the petitioner's decision-making ability regarding their right to either invoke or waive these protections, casting serious doubts on the legality of any statements or admissions garnered during this improper process.

In conclusion, the totality of the actions by law enforcement officials illustrates an indisputable infringement of the petitioner's constitutional rights. The improper initiation of interrogation without warning, the aggressive and coercive questioning tactics, the unauthorized surveillance and recording of the conversations, and the failure to provide Miranda warnings demonstrate a stark breach of authority and a disregard for constitutional mandates. These actions undeniably erode not just the rights of the individual but the ethical foundation and credibility required of law enforcement. This Court must recognize the constitutional violations inflicted upon the petitioner and exclude any evidence obtained through these unconstitutional methods to uphold the integrity of the justice system, protect the rights of the petitioner, and maintain due process. It becomes not just a reasonable request but a necessary imperative to rectify these unconstitutional acts and ensure the safeguarding of legal rights and principles.

## II. LEGAL ARGUMENT

1. Violation of the 4th Amendment: The 4th Amendment guarantees individuals the right against unreasonable searches and seizures. Here, the warrantless interception and recording of the petitioner's communications by law enforcement officials did not meet any established exceptions to the warrant requirement. Consequently, any evidence thus obtained, devoid of the foundational legal underpinning, must be regarded as inadmissible under the exclusionary rule as established in *Katz v. United States*.[33]

2. Violation of the 5th Amendment: The 5th Amendment protects individuals from being compelled to incriminate themselves in any criminal case. In the instant matter, the

---

[33] 389 U.S. 347 (1967)

petitioner's statements were recorded without knowledge or assent, thereby effectively compelling self-incrimination. Such evidence is a direct affront to the privilege against self-incrimination and must be excluded pursuant to *Miranda v. Arizona*,[34] consistent with the doctrine that prohibits the prosecutorial use of an individual's compelled testimonial communications.

3. Violation of the 6th Amendment: The 6th Amendment's guarantee of the right to counsel was compromised as evidence was gathered in a manner that effectively bypassed the petitioner's right to legal representation during the critical stages of the prosecution. The surreptitious recording of conversations made during a phone interrogation, without the opportunity for the petitioner to consult with counsel, denotes a contravention of the substantive right to counsel as enshrined in Massiah v. United States,[35] rendering the evidence inadmissible.

## IV. RELIEF SOUGHT

In light of the aforementioned constitutional transgressions, the Petitioner respectfully requests that this Honorable Court issue an order to suppress all evidence acquired in direct violation of the 4th, 5th, and 6th Amendments. Additionally, in accordance with the fruit of the poisonous tree doctrine, the Court should also exclude any derivative evidence linked to the initial unlawful search and seizure from use as evidence. Furthermore, the Petitioner seeks the dismissal of the indictment with prejudice due to these constitutional infringements, alongside Petitioner's immediate release from unlawful detention, under the supervisory powers vested in the district court.

WHEREFORE, the Petitioner moves this court for the aforementioned relief on the grounds that the unlawful actions perpetrated by law enforcement officials have resulted in irreparable harm to the Petitioner's constitutional rights and the integrity of the judicial process.

[34] 384 U.S. 436 (1966)
[35] 377 U.S. 201 (1964)

Page 25 of 37

Case No. 3AN-21-02545 CR     State v. Baker: Superior Court          Habeas Corpus

## 4. GROUNDS FOUR: INADEQUACY OF EVIDENCE AND DUE PROCESS CONCERNS

The facts surrounding Petitioner's indictment and detainment raise serious doubts about the validity of the prosecution's case due to a conspicuous absence of conclusive evidence. The issues identified can be summarized as follows:

1. Inconclusive Proof: The evidence put forth fails to establish a definitive link between myself and the alleged criminal activities, undermining the credibility of the prosecution's claim of Petitioner's involvement.

2. Insufficient Evidence: The evidence supporting the accusations against Petitioner is fundamentally weak, inadequate, or merely circumstantial. Such evidence does not meet the rigorous standards required for a fair and lawful indictment.

3. Questionable Grounds: The grounds on which the charges were based and subsequent detainment authorized are highly dubious, given the evident lack of solid, incriminating evidence.

4. Evidentiary Gaps: There are noticeable and significant gaps in the evidence needed to substantiate the charges against Petitioner, which calls into question the legal basis for Petitioner's continued detainment.

These points collectively highlight a major issue: the absence of sufficient and concrete evidence to justify Petitioner's indictment and detainment. The reliance on inconclusive and insufficient evidence coupled with the evident gaps in the prosecution's case clearly indicates that the grounds for the criminal charges against Petitioner are not only unsubstantiated but also exceptionally weak. Given these circumstances, it is affirmatively asserted that the charges against Petitioner lack the necessary legal foundation and should, therefore, be reassessed or dismissed to uphold the principles of justice and due process. The continuation of legal actions against Petitioner under these questionable circumstances undermines the integrity of the legal system and fails to meet the standard of proof required for criminal conviction.

### A. BURDEN OF PROOF LEGAL STANDARD

The admission of an altered audio recording as a confession by both the detective and prosecutor fundamentally violates principles of justice and fairness, particularly concerning evidence presented before the grand jury. This tampering with key evidence casts serious doubts on the integrity of the legal process and the ethical conduct of the prosecution. It also jeopardizes the defendant's right to a fair trial. The court must thoroughly examine how this compromised evidence was allowed in the grand jury proceedings, ensuring that justice relies on accurate and unaltered information. U.S. courts require varying levels of corroboration for a confession. Generally, the state must demonstrate "Corpus Delicti" with substantial evidence before admitting statements. This proof must be independent of the confession. In *"United States v. Bay,*[36]*"* the court mandated laying a foundational before introducing evidence. Alaska upholds this in *"Hunter v. State,*[37]*"* referencing *"L.C.H. v T.S.,*[38]*"* which states that a witness cannot testify unless there is sufficient evidence supporting their knowledge of the matter. However, the defendant in this case was provided only with an alleged admission or confession. *"Dodd v. State,*[39]*"* emphasizes that the government must corroborate evidence before introducing a confession. Similarly, *"Rosin v. State,*[40]*"* insists on establishing Corpus Delicti as a prerequisite for admitting confession evidence. *"Armstrong v. State,*[41]*"* and *"Clark v. Municipality of Anchorage,*[42]*"* underline the rule's purpose to ensure substantial, independent evidence affirming the reliability of a confession. *"Langvin v. State,*[43]*"* further clarifies that the state must present evidence confirming the occurrence of the crime. Moreover, *"Pon Wing*

---

[36] (1984, CA9 Cal) 762 F2d 1314 appeal after remand (CA9 Cal) 820 F2d 1511

[37] 2021 Alas. App. Lexis 59

[38] 28 P.3d 915, 921 (Alaska 2001)

[39] 997 P.2d 536 (Alaska App.2000)

[40] 2009 alas. App. Lexus 135

[41] 502 P.2d 440 (Alaska 1972)

[42] 112 P.3d 676 (Alaska App. 2005)

[43] 258 P.3d 866, No. A-10510 (Alaska App. 2011)

Case No. 3AN-21-02545 CR          State v. Baker: Superior Court          Habeas Corpus

*Quong v. U.S.,*[44]" cited in "*Dodd v. State,*" states that a confession cannot be admitted without establishing the Corpus Delicti. "*People v. Jones,*[45]" cited in "*Gamble v. State,*[46]" stresses the rule's significance in ensuring a crime did indeed occur before a confession is admitted. Additionally, "*Jacinth v. State,*[47];" "*Drumbarger v. State,*[48]" dictates that the requirement secures against convictions reliant solely on the defendant's statements, by necessitating corroborating evidence. Lastly, "*Tennyson v. State,*[49]" reaffirms the principle that a crime must be independently verified beyond a mere confession.

In conclusion, the judicial emphasis across these cases firmly establishes the necessity of corroborating a defendant's confession with substantial, independent evidence of a crime, thereby affirming the legal standard for the burden of proof and safeguarding the integrity of the judicial process.

## 5. EXHAUSTION OF REMEDIES AND SYSTEMIC MISCONDUCT IN LOWER COURTS

The Petitioner respectfully submits to this Honorable Court that all available lower court remedies have been thoroughly exhausted as evidenced by a painstaking and diligent pursuit of justice, which has unfortunately been met with systematic disregard. This submission chronicles an extensive procedural odyssey, embarking from the filing of nearly one hundred motions and includes discovery requests, aimed at safeguarding fundamental rights and ensuring a fair trial, to lodging six appeals to the appellate court, all of which have gone unaddressed.

## I. EXHAUSTION OF REMEDIES

Throughout the proceedings, the Petitioner has engaged proactively with the legal system, demonstrating an unyielding commitment to exercising due process rights and seeking relief for

---

[44] 111 F.2d 751 (9th Cir. 1940)
[45] 17 Cal. 4th 279 (Cal. 1998)
[46] Court of Appeals No. A-8693 (Alaska App. 2005)
[47] 593 P.2d 263 (Alaska 1979)
[48] 716 P.2d 6 (Alaska 1986)
[49] Court of Appeals No. A-12352 (Alaska App. 2017)

Case No. 3AN-21-02545 CR     State v. Baker: Superior Court          Habeas Corpus

grievances arising from the conduct of law enforcement, prosecutorial oversight, and judicial handling of the case. The copious volume of motions and discovery requests filed serve as a testament to the Petitioner's proactive efforts to:

1. Obtain all relevant evidence that may prove exculpatory or impeach the credibility of prosecution witnesses.

2. Challenge the constitutional validity of the procedures and evidences arrayed against them.

3. Rectify procedural and substantive injustices perceived at each phase of the pre-trial process.

However, the consistent disregard and dismissal of these critical legal motions, without substantive consideration or judicial oversight, underscore a pattern of neglect and obstruction to the Petitioner's right to a fair legal process.

## II. APPEALS TO APPELLATE COURT

The Petitioner's endeavors to mitigate these judicial and prosecutorial oversights extended beyond the trial court, leading to the initiation of six distinct appeals to the appellate court. These appeals sought to draw attention to:

1. Evidences of prosecutorial misconduct that tainted the fairness of the indictment.

2. Judicial errors that compromised the Petitioner's rights and the integrity of the proceedings.

3. Law enforcement actions that violated constitutional safeguards against unreasonable searches, seizures, and coercive interrogations.

Notwithstanding the gravity of the appeals, their consistent dismissal or neglect by the appellate court illustrates a persistent denial of the Petitioner's right to a just review process, effectively sanctioning the lower court's oversights and misconduct.

Case No. 3AN-21-02545 CR     State v. Baker: Superior Court                    Habeas Corpus

## III. ALLEGATIONS OF MISCONDUCT

Central to the Petitioner's exhaustive legal endeavors has been the urgent call to address and rectify clear instances of prosecutorial, judicial, and police misconduct that have marred the legal proceedings and eroded the foundational principles of justice and fairness. Despite the overwhelming evidence presented and the rigorous legal arguments advanced, the systemic failure to address these grievances signals a disconcerting disregard for due process rights, undermining the very essence of the justice system.

## IV. CONCLUSION AND RELIEF SOUGHT

The motions presented to this supervisory court include a Zurlo motion, a Brady motion, and a motion to suppress evidence. Given the comprehensive and exhaustive engagement with both the trial and appellate courts, which has been met with uniform inattention and dismissal, it becomes palpable that the Petitioner has traversed every conceivable legal avenue seeking redress and justice. This Court represents the Petitioner's final bastion of hope for rectifying the miscarriages of justice endured throughout this protracted legal battle.

WHEREFORE, the Petitioner humbly requests this Honorable Court to recognize the exhaustive and unacknowledged pursuit of justice undertaken in the lower courts. It is imperative that this Court intervene to afford the Petitioner the fundamental right to a fair trial, unrestrained by the misconduct and procedural injustices that have so far characterized these proceedings. Accordingly, the Petitioner seeks relief that may include, but not be limited to, the reversal of lower court decisions, the dismissal of charges with prejudice due to egregious violations of constitutional rights to prevent future misconduct.

## 6. REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

A. GRANT A WRIT OF HABEAS CORPUS: Directing Respondent to promptly present Petitioner before this Court for a judicial determination regarding the lawfulness of Petitioner's detention.

Case No. 3AN-21-02545 CR     State v. Baker: Superior Court     Habeas Corpus

B. DECLARE UNCONSTITUTIONAL DETENTION: Declare that the detainment of the Petitioner is without sufficient legal cause and in violation of his constitutional rights, making such detention unconstitutional, and consequently ordering his immediate release.

C. DISMISSAL OF CHARGES: Direct that any and all criminal charges arising from the actions central to this case be dismissed with prejudice due to the lack of evidence to substantiate said charges, and due to the violation of Petitioner's constitutional rights.

D. EQUITABLE AND COMPENSATORY RELIEF: Award Petitioner equitable and compensatory relief for the wrongful detention he has endured, including but not limited to, recovery of any costs incurred as a result of this unlawful detention, compensation for emotional distress, loss of earnings, and other related damages.

E. PREVENT FUTURE UNLAWFUL DETENTION: Issue an order to prevent future unlawful detentions of Petitioner based on the same unsubstantiated allegations, ensuring that Petitioner's fundamental rights are not again unjustly violated.

F. ADDITIONAL RELIEF: Provide any other relief that this Court deems just and proper in the circumstances, with due consideration given to the urgency of the case owing to the grave impact that continued wrongful detention has on the Petitioner's personal liberty and well-being.

Petitioner emphasizes the exigency of this situation and implores the Court for swift intervention to correct the wrongs that have been imposed upon him, thereby maintaining the sanctity of justice and the protection of fundamental human rights.

Dated this 12th day of June, 2024, in Kenai, Alaska.

Respectfully submitted,

/s/ *Jeramy L. Baker*
Jeramy L. Baker

## DECLARATION

I, Jeramy Lee Baker, do hereby solemnly affirm, under the legal implications of perjury as dictated by the laws of the United States of America, that to the best of my understanding and belief, all the preceding statements stated are truthful and accurate.

Executed on June 12th, 2024.

Respectfully, /s/ Jeramy L. Baker
Jeramy L. Baker
P.O. Box 1773
Kenai, Alaska 99611

### CERTIFICATE OF SERVICE

I, Jeramy L. Baker, hereby certify that on June 12, 2024, I diligently and successfully dispatched via email 37 pages comprising the Emergency Writ for Habeas Corpus and its related appendix attachments. These documents were sent to the following legally designated recipients:

### To the Court:

James M. Fitzgerald U.S. Courthouse and Federal Building

222 West 7th Avenue, Room 229, Box/Suite #4

### To the Government:

Department of Law, Criminal Division
District Attorney's Office
310 K Street, Suite 520
Anchorage, AK 99501
Phone: (907) 269-6300
Fax: (907) 269-6321

I confirm that the delivery of these documents was carried out personally on the date mentioned above.

Respectfully, /s/ Jeramy L. Baker
Jeramy L. Baker

# APPENDIX FOR HABEAS CORPUS

This appendix systematically organizes and presents crucial evidence and documentation in support of the habeas corpus, outlining violations of constitutional rights and procedural errors.

## I. MOTIONS FILED BY THE PETITIONER

1. **Exhibit #A:** Motion to Dismiss Under the Zurlo Precedent - A legal petition advocating for the dismissal of charges pretrial. It contends that an indictment must be vacated if evidence demonstrates law enforcement's omission or misrepresentation of material facts to the grand jury, leading to the indictment. Referenced authority: Zurlo v. State, 506 P.3d 777 (Alaska App. 2022).

2. **Exhibit #B:** Brady Motion - A legal demand for the prosecution to provide the defense with all exculpatory or potentially impeaching evidence that is material to either the defendant's guilt or the severity of the punishment, in accordance with the precedent set by the U.S. Supreme Court in the landmark case of Brady v. Maryland, 373 U.S. 83 (1963).

3. **Exhibit #C:** Motion to Suppress Evidence - A legal motion whereby the petitioner seeks to exclude specific evidence from trial, grounded on expert analysis. The motion argues that: (1) the evidence was authenticated in violation of the petitioner's constitutional rights, notably through illegal search and seizure, and (2) the evidence has been tampered with. These factors—constitutional breach and compromised integrity of evidence—necessitate its inadmissibility under the law.

## II. AUDIO EVIDENCE ANALYSIS

**Exhibit #D:** Reports by Phil Sprague: Expert forensic analysis on audio recordings pertinent to the case, highlighting discrepancies and potential evidence fabrication.

## III. EVIDENTIARY HEARINGS DOCUMENTATION

Documentation from evidentiary hearings includes:

**2022, and 2024 Hearings Transcripts:**

1. **Exhibit #E:** January 20: Detective Brown was confronted during his testimony about fabricating evidence. The cross-examination revealed that he lied in his police report and about altering his audio recording. Playback of the recording during the third session confirmed the

tampering, exposing multiple instances of evidence manipulation and indicating that Brown committed perjury. Moreover, it was shown that the state abetted in concealing the police misconduct.

2.  **Exhibit #F:** March 10: Detective Brown is accused of tampering with his audio recording but denies any alteration of the recording or the accompanying police report that he presented to the grand jury on April 9, 2021. Detective Czajkowski asserts that he possessed a valid glass warrant for the interrogation of the petitioner on October 29, 2020. He insists that under this glass warrant, he properly trained Brown, declaring it to be a legitimate and sound glass warrant.

3.  **Exhibit #G:** March 16: Detective Czajkowski asserts again that he possessed a valid glass warrant for the interrogation of the petitioner on October 29, 2020. He insists that under this glass warrant, he properly trained Brown, declaring it to be a legitimate and sound glass warrant.

4.  **Exhibit #H:** May 5: Expert Phillip Sprague's analysis of the October 29, 2020, audio recording laid bare egregious breaches of integrity and protocol. It has come to light that the state deliberately withheld the AT&T report during the hearings, a calculated obstruction aimed squarely at undermining Sprague's evidence, which incontrovertibly demonstrated severe inconsistencies in the recording's credibility and adherence to proper procedures. This act of concealment by the state is unacceptable and must be addressed.

5.  **Exhibit #I:** June 20: During the evidentiary hearing, Sprague presented a new report asserting that the alleged background noise in the recording was actually evidence of tampering by Brown. Contrarily, the state inaccurately claimed that the AT&T report discredited Sprague's analysis – a clear falsehood. This conclusion underscored the state's misconduct by hiding material evidence, revealing tampering with the evidence.

6.  **Exhibit #J:** August 24 Discovery Hearing: The court acknowledged a significant procedural oversight, admitting that it issued a ruling on August 22, 2022, without reviewing the AT&T report. This admission highlights serious lapses in due diligence and questions the thoroughness of the judicial review that led to the decision.

7. **Exhibit #K**: September 21 Discovery Hearing: The State openly admitted in court that they withheld the AT&T report from the petitioner's legal team during the evidentiary hearings. This deliberate omission constitutes a clear violation of discovery obligations, compromising the integrity and transparency required in the legal process.

8. **Exhibit #L**: May 9, 2024: Court ignored Sprague's analysis and denied suppression motion without a written order.

### IV. Court orders:

1. **Exhibit #M**: August 22, 2022: The court confirmed that detectives needed a "Glass Warrant" to secretly record the petitioner on October 29, 2020, and agreed with the petitioner's rightful argument for indictment dismissal if evidence tampering by the police could be proven. However, it ambiguously concluded that the disputable sound in the audio recording was mere background noise. Additionally, the court incorrectly cited the audio recording's duration as 42 minutes and 55 seconds, overlooking that the actual length is 44 minutes and 10 seconds, a significant discrepancy. This oversight demonstrates the court's negligence in thoroughly reviewing the evidence, inadvertently aiding the state's efforts to conceal clear evidence of police misconduct.

2. **Exhibit #N**: October 31, 2022: The court denied the petitioner's Brady motion, asserting that the AT&T report fails to prove tampering with the audio recording. It reaffirmed its prior decision to deny the petitioner a dismissal of the case with prejudice. This decision demonstrates a clear neglect in reviewing the evidence, effectively denying the petitioner the opportunity to challenge the fraudulent evidence used to indict him, indicating willful judicial misconduct.

3. **Exhibit #O**: May 1, 2024: May 1, 2024: Case 3AN-24-00986CR dismissed; charges dropped for lack of offense.

4. **Exhibit #P**: May 16, 2024: On February 5, 2024, the petitioner presented a new report by Sprague, which meticulously analyzed the AT&T report, the DIMS server metadata, and Brown's testimony, conclusively demonstrating that the audio recording had been altered. This report highlighted the prosecution and police officers' egregious tampering and subsequent destruction of evidence.

Despite this clear evidence of alteration, the court dismissed the new findings, maintaining that the issue had been previously resolved. Additionally, the court denied any further discovery requests and refused to hold a hearing to review the evidence, thereby ignoring the altered state of Brown's recording.

5.  **Exhibit #Q:** On May 31, 2024, the appellate court summarily denied the petitioner's May 20 petition for a de novo review of the motions to dismiss and suppress evidence, which the trial court originally rejected on May 9 and 16, respectively. This refusal to reassess the cases suggests the appellate court's tacit approval of possible prosecutorial and police misconduct.

## V. AFFIDAVIT EVIDENCE

1.  **Exhibit #R: Erin White's Affidavit:** Confirms the presence of procedural violations during the interrogation conducted by Officer Brown on October 29, 2020, without a lawful warrant and under the covert observation of Officer Czajkowski, raising the likelihood of perjury.

2.  **Exhibit #S: Officer Brown's Affidavit (February 1, 2022):** In the affidavit dated February 1, 2022, Officer Brown denies tampering with the audio recordings, affirming under oath that the evidence submitted was 42 minutes and 55 seconds long. A thorough examination, however, uncovers a discrepancy: the audio recording entered into evidence actually spans 44 minutes and 10 seconds. This inconsistency casts doubt on the authenticity and integrity of Officer Brown's evidence and suggests the possibility of perjury.

3.  **Exhibit #T: Allegations of Witness Perjury and State Misconduct:** The grand jury deposition dated April 9, 2021, did not include the necessary medical records to corroborate ET's claims. This omission points to the implication that the States star witness committed perjury. Furthermore, there is an implication of the State of Alaska's involvement in encouraging this false testimony to obtain an indictment against the petitioner.

## VI. DIMSERVER METADATA:

**Exhibit #U:** The DIMServer Metadata serves as pivotal digital evidence, documenting data transactions and activities. This evidence underlines grave concerns regarding the chain of custody and procedural improprieties.

## VII. LATE RECEIPT OF AT&T REPORT

**Exhibit #V:** I received the AT&T report from the state for the first time on August 13, 2022, significantly postdating the evidentiary hearings.

## VIII. PETITIONER'S CELL PHONE RECORDS

**Exhibit #W:** The AT&T report unequivocally states that Brown made two separate phone calls to the petitioner on October 29, 2020, with a six-minute gap between them. Contrary to this, the presented audio recording merges these calls into one continuous dialogue, unequivocally indicating audio manipulation.

This appendix is integral in substantiating the allegations put forth in the complaint, providing a cohesive evidential foundation for the claimed violations of constitutional rights and legal procedures. This evidence is presented confidently to affirm the gravity and certainty of my allegations, seeking a swift and just resolution to this matter through the Alaska court system.

Dated this 12th of June, 2024, in Kenai, Alaska.

Respectfully submitted,

*/s/ Jeramy L. Baker*
Jeramy L. Baker